[Criminal No. 625.   Filed July 14, 1925.]

[237 Pac. 950.]

ADLAS CLAUDE WILSON, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—LIQUOR TAKEN FROM PURCHASER AND HIS COMPANIONS HELD SUFFICIENTLY IDENTIFIED TO RENDER IT ADMISSIBLE IN PROSECUTION OF SELLER.—In prosecution for selling liquor, evidence that liquor, taken by officers from purchaser's car and from his person and person of another occupant of car, was placed in booze room until taken out for the trial, and testimony of officer that sack and bottles were ones seized at time of arrest, *held* sufficient identification to render liquor admissible.

2. CRIMINAL LAW—ADMITTING LIQUOR WITHOUT EVIDENCE OF INTOXICATING CHARACTER PROPER, WHERE TESTIMONY SHOWED IT TO BE

---

2.   See 15 R. C. L. 1133.

GIN.—Admitting bottles of liquor in evidence, in prosecution for selling, without proof that they were intoxicating, *held* proper, where testimony showed it to be gin, though Laws of 1917, chapter 63, section 1, does not specially enumerate gin among prohibited liquors, since courts will judicially notice that whisky, brandy, gin, rum, porter, and strong beer are intoxicating.

3. INTOXICATING LIQUORS—NONEXPERT WITNESS MAY TESTIFY AS TO WHAT BEVERAGE BOTTLES CONTAIN.—Nonexpert witness may testify as to what beverage bottles contain.

4. CRIMINAL LAW — REFUSAL TO STRIKE EVIDENCE OF MERELY PRELIMINARY NATURE HELD NOT PREJUDICIAL.—Refusal to strike certain testimony of state witness, in prosecution for selling liquor, if erroneous, was not prejudicial, where testimony in question was merely preliminary to testimony as to conversation between witness and defendant during which latter agreed to sell the liquor.

5. CRIMINAL LAW—FAILURE OF COURT TO DEFINE "A SALE OF INTOXICATING LIQUORS" HELD NOT ERROR.—In prosecution for selling liquor, assignment that court did not define "a sale of intoxicating liquors" as used in prohibition law *held* not to constitute error, where court did instruct that "a person who sells, gives, barters or disposes of any ale . . . or any intoxicating liquor of any kind . . . is guilty of a misdemeanor," and where no point was made that transaction was other than a sale.

6. CRIMINAL LAW—EVIDENCE OF PREVIOUS CONVICTIONS OF LIQUOR LAW VIOLATIONS COMPETENT TO SHOW ENGAGEMENT IN BUSINESS.— In prosecution for selling liquor, evidence of previous convictions *held* competent under rule permitting evidence of other sales to show engagement in business of violating prohibition law.

See (1) 16 **C. J.**, p. 620. (2) 33 **C. J.**, pp. 496, 497. (3) 33 **C. J.**, p. 773. (4) 17 **C. J.**, p. 307. (5) 16 **C. J.**, p. 1063. (6) 16 **C. J.**, p. 605.

APPEAL from a judgment of the Superior Court of the County of Maricopa. W. R. Chambers, Judge. Affirmed.

Messrs. Campbell & Shadle, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

3. See 11 **R. C. L.** 635.
6. See 15 **R. C. L.** 398.

McALISTER, C. J.—Adlas Claude Wilson was convicted of the crime of selling intoxicating liquors, and given a sentence of eighteen months in the county jail and a fine of $300. His motion for a new trial being overruled, he brought the case here seeking a reversal of the judgment.

The action of the court in admitting in evidence certain bottles containing the alleged liquor without first having the bottles identified to that degree of proof required in criminal actions for its introduction is assigned as error. This assignment is, we think, clearly without merit. It appears that appellant and one J. C. Sands met in Phoenix, near the Adams Hotel, on the afternoon of March 21, 1925, when an arrangement was made whereby appellant agreed to sell Sands some tequila and gin, delivery to be made later in the day on a road north of the fair grounds; that in accordance with this agreement Sands went to the place designated about 4:35 that afternoon, and within four or five minutes thereafter appellant drove up from the east in a large car and delivered to him a sack of tequila and a carton of gin, for which he paid appellant $90; that appellant immediately drove away, and Sands went to town with the tequila and gin, leaving four bottles of the latter at the home of a friend who accompanied him on the trip and in whose car they were riding. From there he went to his home where he found four men waiting for him. He left two bottles and part of a third there, and placed the balance in another car in which he and these four men drove away. While they were proceeding west on Filmore Street, between Third and Fourth Streets, they were stopped by the officers, arrested, and then taken to the sheriff's office, along with the tequila and gin which the officers found in their possession. Deputy Sheriff Irving testified

that he placed this tequila and gin in the "booze room" at the sheriff's office, and took it out for the trial, and that he took one of the bottles from the sack and had it analyzed. Three of the bottles were taken from Sands' pocket, one from the shirt of S. J. Dean, and the others from the car in which they were riding. Paul Stone, one of the officers who made the arrest, testified that the sack and these bottles were the same ones seized at the time of the arrest. No further identification of the liquor taken from the car and its occupants was needed to render it admissible.

It is further claimed that the court admitted in evidence the contents of certain bottles without its first being shown by some qualified witness or witnesses or records that they were intoxicating as required by chapter 63, section 1, of the Session Laws of Arizona 1917. That section makes it a misdemeanor to sell "ale, beer, wine or any malt, vinous or spirituous liquors or any mixture or preparation of like nature, or any intoxicating liquors of any kind." Tequila and gin, it will be observed, are not specially enumerated as articles the sale of which constitutes an offense, and there was no evidence that they are intoxicating; hence, appellant claims that the court erred in admitting these in evidence. The statute makes it a misdemeanor to sell not only ale, beer or wine, but intoxicating liquors of any kind, and even though there was no evidence that the liquors appellant sold Sands were intoxicating yet the latter testified that he tasted the contents of one bottle and it was gin; the witness Brandt testified that the carton contained gin, and Officer Irving said that part of the bottles contained gin and part tequila. This fact being established, there was no necessity that anyone testify that the beverage sold was intoxicating, for "the courts take judicial notice that whisky, brandy, gin, rum, porter,

and strong beer are intoxicating." 33 C. J. 496; *Snider* v. *State,* 81 Ga. 753, 12 Am. St. Rep. 350, 7 S. W. 631. In *Commonwealth* v. *Peckham,* 68 Mass. (2 Gray) 514, the court said:

"Jurors are not to be presumed ignorant of what everybody else knows. And they are allowed to act upon matters within their general knowledge, without any testimony on those matters. Now everybody, who knows what gin is, knows not only that it is a liquor, but also that it is intoxicating. And it might as well have been objected that the jury could not find that gin was a liquor, without evidence that it was not a solid substance, as that they could not find that it was intoxicating, without testimony to show it to be so. No juror can be supposed to be so ignorant as not to know what gin is. Proof, therefore, that the defendant sold gin is proof that he sold intoxicating liquor."

None of the witnesses were questioned concerning their qualifications to testify as to what the beverages in question were, and appellant contends, therefore, that there was no competent evidence as to what the liquor sold was. This contention, however, is without merit, because it does not require an expert to testify that a particular article is gin. Whether it is or not is a matter of common knowledge. *Commonwealth* v. *Timothy,* 74 Mass. (8 Gray) 480. In 33 C. J. 773, the rule is given in this language:

"For the purpose of proving the particular kind of liquor which was sold, it is proper to admit the direct testimony of a witness, who need not be an expert or a chemist, that it was whisky, or other named liquor as the case may be, that it looked, smelled, or tasted like whisky, beer, or other named liquor, or that the witness called for the particular kind of liquor alleged to have been sold, and received liquor purporting to be of that kind."

Sands testified that before meeting appellant at the Adams Hotel he "called him over the phone and

found he was out, and they said he was down town, and they would try and get him in touch with me, and the next time I saw him in front of the Adams.'' Appellant moved that this answer be stricken, but his motion was overruled, and he assigns this ruling as error. It is very clear that it was merely preliminary to Sands' testimony of the conversation between him and Wilson a little later at the Adams Hotel, and in view of this, even if it should have been stricken, it is impossible to see wherein the refusal to strike could have resulted in prejudicial error.

The court did not define the term ''a sale of intoxicating liquors'' as used in the prohibition law, and its failure in this respect forms the basis of the fifth error assigned. It did tell the jury, however, that, ''by the laws of this state, a person who sells, gives, barters or disposes of any ale, beer, wine, or any malt, vinous or sprituous liquors, or any mixture or preparation of a like nature, or any intoxicating liquor of any kind to any person in the state of Arizona is guilty of a misdemeanor.'' We are unable to see wherein anything further was required or could have been of any assistance to the jury, for the word, ''sells,'' was understood as well by it as by the court. It would, of course, have been the duty of the court to charge the jury ''on any points pertinent to the issue,'' if requested to do so (*Uren* v. *State,* 27 Ariz. 491, 232 Pac. 398), but no point was made as to whether the transaction might have constituted something other than a sale and no request for an instruction thereon was made; hence, no occasion arose for defining this term. The information charged a sale, and the evidence showed that appellant delivered the liquor to Sands, and that Sands gave him $90 for it. That such a transaction was a sale is so plain that no ''point'' could have arisen concerning it.

Permitting the prosecuting attorney, over appellant's objection, to cross-examine him as to prior offenses and details surrounding them, one of such offenses not being a felony, is assigned as error. The county attorney asked appellant upon cross-examination if, on October 8, 1924, he was convicted in the federal court of Arizona of the crime of possessing intoxicating liquors and fined five hundred dollars, and he answered that he had after the court overruled an objection to the question upon the ground that the distinction between a misdemeanor and a felony had not been explained to him. Following this, the county attorney asked him if he had not been convicted on March 15th, 1919, in the federal court of Arizona for transporting intoxicating liquor from one state to another, and given therefor a sentence of two years in the federal penitentiary, and a fine of one thousand dollars, and to this he replied that he had been convicted about that time, not for transporting but for a conspiracy to violate the Reed Amendment (U. S. Comp. Stats. 1918; U. S. Comp. Stats. Ann. Supp. 1919, §§ 8739a, 10387a–10387c). It is admitted that it was proper to interrogate him as to previous convictions for a felony to affect his credibility, but contended that it was improper to question him as to convictions for a misdemeanor. In support of this rule he cites *Hadley* v. *State,* 25 Ariz. 23, 212 Pac. 458, and *West* v. *State,* 24 Ariz. 237, 208 Pac. 412, in the former of which these words appear:

"The general rule, in the absence of a statute regulating the matter, when a defendant offers himself as a witness, is that it may be shown, either by the record or on cross-examination, that he has suffered previous conviction of a felony or felonies."

Both of the offenses he was asked about concerned violations of the liquor laws, and were of the same general character as the one for which he was being

tried. Whether, therefore, it was permissible to question him as to a conviction for a misdemeanor (that is, possessing intoxicating liquors) as affecting his credibility, it was clearly proper, under the rule permitting evidence of other sales of intoxicating liquors than that charged for the purpose of showing that he was in the business of violating the prohibition law, to ask him if he had been convicted for possessing intoxicating liquors. *Cluff* v. *State,* 16 Ariz. 179, 142 Pac. 644. If questions concerning other sales than the one charged could be asked of the defendant or other witnesses, there certainly could be no objection to questions seeking to disclose that he had been convicted of making such sales, or of any violation of the prohibition statute.

No error appearing, the judgment is affirmed.

ROSS and LOCKWOOD, JJ., concur.